Eduardo Casas (*pro hac vice*)
Luis L. Lozada (*pro hac vice*)
MEXICAN AMERICAN LEGAL DEFENSE
AND EDUCATIONAL FUND
634 South Spring Street, 11th Floor
Los Angeles, CA 90014
Telephone: (213) 629-2512
Facsimile: (213) 629-0266
Email: ecasas@maldef.org
       llozada@maldef.org

Kathia Quiros (NV Bar No. 8874)
GWP IMMIGRATION LAW
8942 Spanish Ridge Ave., Ste. 1
Las Vegas, NV 89148
Website: www.gwp.law
Telephone (702) 738- 7717
Email: kq@gwp.law

*Attorneys for Plaintiff
and the Proposed Class*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| JORGE HERNANDEZ CASTRO, an individual, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ONE NEVADA CREDIT UNION,<br><br>Defendant. | Case No.: 2:22-cv-01563-GMN-BNW<br><br>Hon. Gloria M. Navarro<br><br>**PLAINTIFF'S NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY SETTLEMENT APPROVAL** |

**NOTICE OF MOTION AND UNOPPOSED MOTION**

PLEASE TAKE NOTICE that, as soon as the matter may be heard, in the above-named Court, located at 333 Las Vegas Blvd South, Las Vegas, Nevada 89101, the Honorable Gloria M. Navarro presiding, Plaintiff Jorge Hernandez Castro, individually and as class representative on behalf of the Class, will, and hereby, does move for the following relief with respect to the Settlement Agreement and Release with Defendant One Nevada Credit Union ("One Nevada"):

1. That the Court certify, for settlement purposes only, the settlement class under Federal Rule of Civil Procedure 23(a) and (b)(3);

2. That the Court appoint Plaintiff as Class Representative;

3. That the Court appoint Plaintiff's attorneys as Class Counsel;

4. That the Court grant preliminary approval of the Settlement;

5. That the Court approve mailing to the Class Members the proposed Class Notice;

6. That the Court appoint RG2 Claims Administration LLC as the Settlement Administrator; and

7. That the Court schedule a hearing for final approval of the Settlement.

This Motion is made on the grounds that the Settlement is the product of arms-length, good-faith negotiations; is fair, reasonable, and adequate to the Class; and should be preliminarily approved, as discussed in the attached memorandum.

This Motion is based on: this notice; the following memorandum in support of the Motion; the Declaration of Luis L. Lozada and attached Settlement Agreement and Release; the Court's record of this action; all matters of which the Court may take notice; and oral and documentary evidence presented at the hearing on the Motion. One Nevada does not oppose this Motion.

**PLAINTIFF'S UNOPPOSED MOTION
FOR PRELIMINARY SETTLEMENT APPROVAL**          CASE NO.:
2:22-CV-01563-GMN-BNW

**TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................................1
II. FACTUAL AND PROCEDURAL BACKGROUND............................................................2
III. PROPOSED SETTLEMENT .................................................................................................3
    A. The Settlement Class.......................................................................................................3
    B. Settlement Overview.......................................................................................................3
        1. *Corrective Action* ......................................................................................................3
        2. *Monetary Relief* .......................................................................................................4
    C. Distribution to Class Members .......................................................................................4
    D. Cy Pres Distribution of any Unclaimed Settlement Funds .............................................4
    E. Notice to Class Members ................................................................................................5
    F. Attorneys' Fees and Expenses, Settlement Administrator's Costs, and Class Representative Service Award ........................................................................................6
IV. ARGUMENT ..........................................................................................................................6
    A. Certification of the Class is Proper Under Rule 23.........................................................7
        1. *Rule 23(a) is Satisfied* ..............................................................................................7
        2. *Rule 23(b)(3) is Satisfied* .........................................................................................8
        3. *Plaintiff's Counsel Should Be Appointed as Class Counsel* ....................................9
    B. The Settlement is Fair, Adequate, and Reasonable.........................................................9
    C. The Proposed Incentive Award is Fair, Adequate and Reasonable. .............................11
    D. The Proposed Notice is Clear and Adequate ................................................................12
V. A FINAL APPROVAL HEARING SHOULD BE SCHEDULED......................................13
VI. CONCLUSION………………………………………………………………….………14

i

# TABLE OF AUTHORITIES

Cases                                                                                                                    Page(s)

*Abdullah v. U.S. Sec'y Assocs.*,
   731 F.3d 952 (9th Cir. 2013) ........................................................................................ 7
*Amchem Prod., Inc. v. Windsor*,
   521 U.S. 591 (1997) ..................................................................................................... 8
*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013) ..................................................................................................... 8
*Bellinghausen v. Tractor Supply Co.*,
   306 F.R.D. 245 (N.D. Cal. 2015) .............................................................................. 12
*Castillo v. Bank of Am., NA*,
   980 F.3d 723 (9th Cir. 2020) ....................................................................................... 8
*Churchill Vill., L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ..................................................................................... 13
*Cook v. Niedert*,
   142 F.3d 1004 (7th Cir. 1998) ................................................................................... 12
*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ........................................................................... 7, 9,10
*Howell v. JBI, Inc.*,
   298 F.R.D. 649 (D. Nev. 2014) ................................................................................... 6
*Millan v. Cascade Water Servs., Inc.*,
    310 F.R.D. 593 (E.D. Cal. 2015) ................................................................................ 9
*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ................................................................................. 9, 12
*Roes, 1-2 v. SFBSC Mgmt., LLC*,
   944 F.3d 1035 (9th Cir. 2019) ..................................................................................... 1
*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ................................................................................. 6, 11
*Tierno v. Rite Aid Corp.*, No. C,
   2006 WL 2535056 (N.D. Cal. Aug. 31, 2006) ............................................................ 9
*Tyus v. Wendy's of Las Vegas, Inc.*,
   407 F. Supp. 3d 1088 (D. Nev. 2019)......................................................................... 9
*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ..................................................................................................... 7

Statutes

42 U.S.C. § 1981............................................................................................... 1, 2, 7, 10

Rules

Fed. R. Civ. P. 23(a)(1) ......................................................................................................... 7
Fed. R. Civ. P. 23(a)(2) ......................................................................................................... 7
Fed. R. Civ. P. 23(a)(3) ......................................................................................................... 7
Fed. R. Civ. P. 23(a)(4) ......................................................................................................... 8
Fed. R. Civ. P. 23(a), (b)....................................................................................................... 6

Fed. R. Civ. P. 23(c)(2)(B) .................................................................................................... 13
Fed. R. Civ. P. 23(e)(2) ............................................................................................................. 7
Fed. R. Civ. P. 23(g)(1)(A) ....................................................................................................... 9
Federal Rule of Civil Procedure 23(a) and (b)(3) ..................................................................... 1
Federal Rules of Civil Procedure 23(a) and 23(b)(3); (2) ....................................................... 14
Rule 23 ............................................................................................................................. 1, 7, 9
Rule 23(a) .............................................................................................................................. 7, 8
Rule 23(b)(3) .................................................................................................................. 8, 9, 14
Rule 23(c)(2) .................................................................................................................... 12, 13

**Other Authorities**

4 Newberg on Class Actions § 11:22 (4th ed. 2002) …………………………………….……...7

# MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION

## I. INTRODUCTION

The class-action Settlement Agreement and Release ("Settlement" or "Settlement Agreement") now before the Court is the product of more than eighteen months of direct discussions and negotiations between the Parties regarding the legal issues raised in this case, the merits of Plaintiff's claims, the accurate identification of proposed settlement class members, and the alleged potential damages.[1]

The Settlement, which was the result of arms-length and good faith negotiations conducted through direct communications between counsel, provides a cash Settlement Fund of $76,000 for the 38 members of the proposed settlement Classes ($2,000 per Class Member). Although 42 U.S.C. § 1981 does not provide for minimum statutory damages, the Settlement represents a substantial recovery for the proposed Class without needing to prove actual damages, and the Individual Settlement Payments will be distributed to the Class Members without need for them to complete a claim form or take any additional steps such as submitting documentation. In addition to monetary relief, the Settlement provides corrective action. One Nevada has agreed to update its underwriting policies as appropriate to provide that it will not deny Consumer Credit Products to otherwise qualified applicants with a valid "For Work Only" social security number, eliminating the harm alleged in the Complaint for all future applicants.

For the reasons set forth below, the Settlement represents an excellent result for the Classes in this litigation and satisfies the requirements of Rule 23 and Ninth Circuit precedent. *See Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1060 (9th Cir. 2019). The Parties have engaged in good-faith, arms-length settlement negotiations, including confirmatory discovery. Therefore, Plaintiff respectfully requests this Court grant preliminary approval of the Settlement. Granting preliminary approval will allow notice of the Settlement to be distributed to the Class Members, allowing them to object or opt out, and for a hearing to be scheduled to consider whether to grant final approval.

---

[1] The Settlement Agreement is attached as Exhibit A to the Declaration of Luis L. Lozada in Support of Plaintiff's Unopposed Motion for Preliminary Settlement Approval ("Lozada Decl."). Capitalized terms not defined here shall have the meanings as defined in the Settlement Agreement.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Jorge Hernandez Castro is a resident of Las Vegas, Nevada and has been a recipient of Deferred Action for Childhood Arrivals ("DACA") since 2012. As a DACA recipient, Plaintiff is authorized to work in the United States and has a "work only" social security number. In July 2022, Plaintiff applied for an auto loan from Defendant One Nevada Credit Union ("One Nevada"). The representative told Plaintiff Hernandez that he must be a resident of Nevada to become a member of the credit union. As part of the application and membership process, Plaintiff Hernandez submitted his Nevada driver's license for identification purposes and informed the representative that he had a work permit. Plaintiff Hernandez was subsequently denied an auto loan and membership to the credit union on January 15, 2022. One Nevada sent Plaintiff Hernandez a "Statement of Credit Denial, Termination or Change." Under "the principal reason(s) for the above credit decision(s)" the "other" box is marked as "We do not grant credit to any applicant on the terms and conditions you requested." On July 25, 2022, Plaintiff Hernandez emailed Briana Jackson, a representative at the credit union with whom he had previously been communicating about his application, to confirm whether he was denied because of his "citizenship eligibility." On July 26, 2022, Jackson emailed him that the credit union was "unable to go forward with your application because you stated that your social security card says 'For Work Purposes Only.' Unfortunately, due to the Credit Union's policy, we cannot fund loans to members that do not have a valid security card."

On September 16, 2022, Plaintiff filed a putative class-action complaint in this Court against One Nevada, alleging claims of alienage discrimination in violation of the Civil Rights Act of 1966, 42 U.S.C. § 1981 ("Section 1981"). Compl., ECF No. 1. Plaintiff alleges that One Nevada has a policy of denying applicants for financial products and membership based on their alienage and/or immigration status (the "Challenged Practice"). *Id*.

One Nevada filed a Motion to Dismiss Plaintiff Hernandez's complaint on December 13, 2022. ECF No. 17. The Court denied One Nevada's motion on September 15, 2023. ECF No. 35. Since then, the Parties have engaged in ongoing good-faith negotiations to resolve the claims alleged, ultimately resulting in an agreement in principle to settle this action. On September 6,

1  2024, the Parties filed a joint notice of settlement. ECF No. 43.

2  **III.      PROPOSED SETTLEMENT**

3      **A.      The Settlement Class**

4  For settlement purposes only and consistent with the Parties' Settlement, Plaintiff seeks certification of the following Settlement Class, defined as: the 38 individuals who, according to Defendant's records: (i) applied for a financial product from January 1, 2020 through the date on which the Court grants preliminary approval; (ii) were residing in any state in the United States at the time they applied; and (iii) were denied full and equal consideration for such financial product solely because of their immigration or citizenship status at the time they applied. *See* Settlement § 1(p).

    **B.      Settlement Overview**

The Settlement provides two important forms of relief for Class Members: (1) corrective action under which One Nevada will not deny Consumer Credit Products to otherwise qualified applicants with a valid "For Work Only" social security number, unless required by binding law, rules, or regulations to do so, and will amend its underwriting criteria accordingly, *id*. at § 2; and (2) Defendant will pay $76,000 to be used for individual payments by check made payable to each Class Member (the "Settlement Fund") to compensate Class Members for the alleged statutory violations and harm suffered. *See id* at §§ 1(v) and 11(d)(iv).

    **1.      Corrective Action**

The Settlement provides for comprehensive corrective action to One Nevada's underwriting criteria to eliminate any present or future risk of the Challenged Practice. Specifically, One Nevada agrees that it has ceased the Challenged Practice, and agrees that One Nevada will not deny Consumer Credit Products to otherwise qualified applicants with a valid "For Work Only" social security number, unless required by binding law, rules, or regulations to do so. *Id*. at § 2. One Nevada also agrees that it will train its managers, supervisors, and staff on the corrective action set forth in the Settlement Agreement and will ensure compliance with all credit union-related requirements reflected in the Nevada Revised Statutes (NRS). *Id*.

3

### 2. Monetary Relief

One Nevada has agreed to settle for $112,000, which shall be paid to the Settlement Administrator in accordance with the terms of this Agreement, and which includes the Settlement Fund, any attorneys' fees and costs, incentive awards, and Settlement Administrator costs. *Id*. at § 1(u). Of this Settlement Amount, $76,000 will be allocated to the Settlement Fund that will be used to make individual payments in the amount of $2,000 by check to each Class Member. *Id*. at § 1(v). The Settlement Fund will be paid to Class Members; the Settlement Administrator will separately pay the court-approved attorneys' fees and costs and incentive award. *Id*. at §§ 1(u) and 1(v).

### C. Distribution to Class Members

The Settlement does not require class members to submit a claim or take any action to claim the monies they are entitled to under the Settlement. *Id*. at § 11(d)(iv). Rather, payments will be made to Class Members by check payable to the Class Member and mailed to the Class Member's last known address. *Id*. Addresses will be updated by the Claims Administrator through skip-trace or other means.

### D. Cy Pres Distribution of any Unclaimed Settlement Funds

If any checks mailed to Class Members remain uncashed for 150 days after the checks are sent ("Unclaimed Settlement Funds"), those funds do not revert to One Nevada. *Id*. at § 12. Instead, any Unclaimed Settlement Funds will be paid to *cy pres* recipients proposed by Class Counsel and approved by the Court. *Id*.

Class Counsel proposes TheDream.US and Immigrants Rising as *cy pres* recipients. TheDream.US is the nation's largest college and career success program for undocumented immigrants and has provided more than 10,000 scholarships to DACA recipients. Immigrant Rising transforms the lives of undocumented people through college scholarships and resources, as well as career counseling. Both organizations will serve Class Members and similarly-situated individuals, and the interests of the Class.

"The *cy pres* doctrine allows a court to distribute unclaimed or non-distributable portions of a class action settlement fund to the 'next best' class of beneficiaries. *Cy pres* distributions must

4

1  account for the nature of the plaintiff's lawsuit, the objective of the underlying statutes, and the
2  interests of the silent class members, including their geographic diversity." *Nachshin v. AOL, LLC*,
3  663 F.3d 1034, 1036 (9th Cir. 2011) (internal citation omitted).  Under the *cy pres* approach, "class
4  members receive an indirect benefit (usually through defendant donations to a third party) rather
5  than a direct monetary payment." *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012).  To
6  avoid the "many nascent dangers to the fairness of the distribution process," courts require that
7  there be "a driving nexus between the plaintiff class and the *cy pres* beneficiaries." *Nachshin*, 663
8  F.3d at 1038.

9  There is a nexus between the work of TheDream.US and Immigrants Rising and the subject
10 matter of this lawsuit—alleged discrimination against non-citizens.  *See In re Easysaver Rewards*
11 *Litig.*, 906 F.3d 747, 761–62 (9th Cir. 2018) (discussing that *cy pres* recipients should be selected
12 in light of the objectives of the underlying statute and the interest of the class).  Both organizations
13 strive to serve non-citizens through scholarships and college resources in order for non-citizens to
14 improve their lives.  Plaintiff brought this lawsuit to challenge an allegedly discriminatory policy
15 that barred non-citizens from full and equal consideration for One Nevada's credit products.  Any
16 *cy pres* distribution will promote the organizations' mission to help non-citizens to have a better
17 future by allowing them to participate and become part of society.  Therefore, TheDream.US and
18 Immigrants Rising should be approved as *cy pres* recipients.

19      **E.**    **Notice to Class Members**

20 The Settlement includes proposed English and Spanish-language short-form and long-form
21 notices to the class members that inform them of the terms of the Settlement and their rights to
22 object to, or to opt out of, the Settlement, or to do nothing and receive the benefits of the Settlement
23 and be bound by it.  *Id*., Exs. 1-2. All Class Members will receive notice by mail sent to the best
24 available mailing  address for each Class Member, updated as appropriate by running the Class
25 Member's name through the National Change of Address Registry.  Settlement § 5(b).  For all
26 notices that are returned as undeliverable, the Settlement Administrator will use standard skip-
27 tracing devices to obtain forwarding address information and re-mail the notice.  *Id*.  A website will
28 also be established to provide Class Members with additional information relating to the Settlement.

*Id.* at § 6(g).

### F. Attorneys' Fees and Costs, Settlement Administrator's Costs, and Class Representative Service Award

Attorneys' fees, costs of litigation, and the cost of Notice and Administration shall be paid by the Settlement Administrator in addition to the payments to Class Members. These expenses will be paid separate and apart from the Settlement Fund. Class Counsel will file a motion seeking approval for its attorneys' fees and costs. *Id.* at § 9. One Nevada will not oppose an application for attorneys' fees of up to $21,229. *Id.* at § 11(d)(i). Class Counsel's estimated fees will not exceed $21,229. This estimate of attorneys' fees encompasses any work conducted by Class Counsel prior to settlement, and any future work conducted following the Court's order granting preliminary approval, including but not limited to: answering questions from Class Members; reviewing documentation; drafting and submitting a motion for attorneys' fees and cost, and drafting and submitting a motion for final approval.

Class Counsel will also file a motion requesting that the Court approve payment of the Settlement Administrator's costs. The Settlement Administrator shall be RG2 Claims Administration, LLC. A copy of the Administrator's brochure detailing its experience and services is attached to the Lozada Declaration as Ex. B.

Class Counsel will also apply for a Service Award for the Named Plaintiff of up to $5,000 in recognition of his efforts in this case that have resulted in a benefit to all of the Class Members. *Id.* at § 11(d)(ii).

## IV. ARGUMENT

"Where, as here, parties reach an agreement before class certification, 'courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement.'" *Howell v. JBI, Inc.*, 298 F.R.D. 649, 654 (D. Nev. 2014) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003)). Thus, the court must make two determinations at the preliminary approval stage: first, the court must determine that the settlement class meets the requirements for class certification, Fed. R. Civ. P. 23(a), (b); second, the court must determine on a preliminary basis that the settlement is fair, reasonable, and adequate such that notice should be

6

sent to the proposed class, Fed. R. Civ. P. 23(e)(2).  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025–26 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 338 (2011).

### A. Certification of the Class is Proper Under Rule 23

"The validity of use of a temporary settlement class is not usually questioned."  ALBA CONTE & HERBERT B. NEWBERG, 4 NEWBERG ON CLASS ACTIONS § 11:22 (4th ed. 2002).  For settlement purposes here, the Parties agree to certify the proposed Classes.  The relevant factors under Rule 23 weigh in favor of certification.

#### 1. Rule 23(a) is Satisfied

First, numerosity is satisfied because joinder of the Class Members would be impractical. Fed. R. Civ. P. 23(a)(1).  One Nevada's records identify 38 individual applicants who applied for Financial Products and were denied based solely on their alienage or immigration status during the class period. *See* Ex. A at § 1(e).

Second, commonality is satisfied because "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  When determining whether commonality is met, the Supreme Court has instructed that the focus is on whether there are common issues of fact among class members and whether class treatment will "generate common answers apt to drive the resolution of the litigation."  *Abdullah v. U.S. Sec'y Assocs.*, 731 F.3d 952, 957 (9th Cir. 2013) (quoting *Dukes*, 564 U.S. at 350).  Here, common issues include whether One Nevada's Challenged Practice at the time Plaintiff applied for a financial product (e.g., auto loan) denied Plaintiff and Class Members the opportunity to receive a financial product solely on the basis of their alienage or immigration status, and whether One Nevada violated Section 1981.  *See Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *overruled on other grounds by Mattioda v. Nelson*, 98 F.4th 1164, 1174 (9th Cir. 2024) (discussing that, in the civil rights context, "commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members.").

Third, typicality is satisfied because the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of

absent class members; they need not be substantially identical." *Castillo v. Bank of Am., NA*, 980 F.3d 723, 729 (9th Cir. 2020) (internal quotation marks omitted). Here, Plaintiff's claims are typical of the Classes he seeks to represent because he alleges that: (1) he was legally residing in the United States as a DACA recipient, (2) he applied for a financial product from One Nevada in 2022, and (3) his application was denied based solely on his alienage or immigration status.

Fourth, Plaintiff is an adequate class representative because he has and will adequately protect the interests of the Classes. Fed. R. Civ. P. 23(a)(4). The adequacy requirement is met where a class representative "possess[es] the same interests and suffer[s] the same injury as the class members." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997) (internal quotation marks omitted). Here, Plaintiff has the same interests as other Class Members and has shown that he can fairly and adequately protect Class Members' interests. Like all Class Members, Plaintiff was denied his financial-product application by One Nevada because he is not a U.S. citizen. Plaintiff has no conflicts of interest with the Class Members, and Class Members stand to benefit substantially from Plaintiff's pursuit of damages on their behalf.

Additionally, Plaintiff is represented by adequate counsel. The Mexican American Legal Defense and Educational Fund ("MALDEF") has extensive experience litigating complex civil rights class actions, and Class Counsel has vigorously prosecuted this action on behalf of Plaintiff and has engaged in extensive settlement negotiations with One Nevada. For these reasons, Class Counsel satisfies the adequacy requirement of Rule 23(a).

### 2. Rule 23(b)(3) is Satisfied

Rule 23(b)(3) requires that common questions predominate over individual ones and that a class action is superior to other available methods for adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). Both requirements are met here.

Here, the Class is sufficiently cohesive to satisfy predominance. *Amchem*, 521 U.S. at 623. Predominance does not require "that each element of [a plaintiff's] claim [is] susceptible to classwide proof." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013) (internal quotation marks omitted). Rather, the "predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common,

8

aggregation-defeating, individual issues." *Amchem*, 521 U.S. at 626 (internal quotation marks omitted). Plaintiff challenges One Nevada's financial-product underwriting criteria and policies that apply to all Class Members. Common questions as to their nature and legality can be adjudicated collectively and, "predominance is satisfied where the determination of whether the policies at issue actually violate [the applicable law] will answer a bulk of the inquiry before the Court." *See Tyus v. Wendy's of Las Vegas, Inc.,* 407 F. Supp. 3d 1088, 1102 (D. Nev. 2019) (quoting *Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 606 (E.D. Cal. 2015)).

Whether Rule 23's superiority factor is met rests on factors like individual class members' desire to bring individual actions and the utility of concentrating the litigation in one forum. Fed. R. Civ. P. 23(b)(3). Here, "there is no indication[] that class members seek to individually control their cases, that individual litigation is already pending in other forums, or that this particular forum is undesirable for any reason." *Tierno v. Rite Aid Corp.*, No. C 05-02520 TEH, 2006 WL 2535056, at *11 (N.D. Cal. Aug. 31, 2006). Additionally, the compensation to Class Members relative to the cost of litigation weighs in favor of superiority. *See Tyus* , 407 F. Supp. 3d at 1102. Because the class mechanism will achieve economies of scale for Class Members, conserve judicial resources, and preserve public confidence in the system by avoiding repetitive proceedings and preventing inconsistent adjudications, superiority is met.

### 3. Plaintiff's Counsel Should Be Appointed as Class Counsel

Adequacy of class counsel depends on (1) work performed on the matter, (2) experience, (3) knowledge of the law, and (4) resources that counsel can commit. Fed. R. Civ. P. 23(g)(1)(A). Class Counsel readily satisfy these criteria, as set forth above, and as demonstrated by activity in this case to date.

## B. The Settlement is Fair, Adequate, and Reasonable

Once the Court has found class certification is proper, it must determine if the settlement is "fundamentally fair, adequate, and reasonable." *Hanlon*, 150 F.3d at 1026. In deciding whether to grant preliminary approval of a settlement, courts "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution[.]" *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). Courts may consider and balance a number of other factors, such as: "[1] the

9

strength of the plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; the extent of discovery completed . . . [and] [5] the experience and views of counsel[.]" *Hanlon*, 150 F.3d at 1026 (considering other factors not relevant here).

Here, the weight of factors demonstrates that the Settlement is fair, adequate, and reasonable. This is for four principal reasons.

*First*, Plaintiff faces substantial obstacles to full recovery, and defendant liability is not guaranteed. Plaintiff's claims for discrimination on behalf of DACA recipients present a relatively novel theory with unsettled issues—*e.g.*, whether immigration-status discrimination is cognizable under § 1981; whether the evidence would support an argument that One Nevada's Challenged Practice was a pre-text for alienage discrimination, etc. Further, the Class may face challenges demonstrating actual damages that can be calculated and proved on a class-wide basis. This Settlement mitigates these risks posed to the Class Members.

*Second*, the monetary and corrective action relief provide substantial value for Class Members. Class Members will receive individual payments of $2,000, which is significantly more than other similar cases, considering that § 1981 does not have statutory damages and Class Members will not have to establish actual damages. Similarly, the Settlement provides prospective corrective action intended to eliminate the allegedly discriminatory practices. This corrective action relief represents the *maximum* degree of prospective relief available under the circumstances.

*Third*, the Settlement was reached as the result of lengthy, thorough, arms-length negotiations. Lozada Decl. ¶¶ 16–17. Specifically, the Parties, through counsel: exchanged informal discovery, including credit application and records, copies of policies and procedures, and records regarding One Nevada's membership base, to assess the merits of Plaintiff's discrimination claims and the number of potentially affected Class Members. Following this exchange of discovery, and an evaluation of the terms of court-approved class action settlements in similar cases filed by Class Counsel against several banks and credit unions, the parties negotiated the terms of the Settlement, including the payments to individual Class Members and One Nevada's obligation to pay for attorneys' fees, the cost of an incentive award, and the cost of administration in addition

10

PLAINTIFF'S UNOPPOSED MOTION
FOR PRELIMINARY SETTLEMENT APPROVAL                                2:22-CV-01563-GMN-BNW

to the payments to Class Members. *Id*.

Overall, the Parties exchanged multiple offers and counter-offers over this period until a settlement in principle was reached. *Id*. at ¶ 16. Class Counsel initially sought compensation for each financial product and membership application for each class member. However, Class Counsel agreed to drop compensation for membership application denials because those records were not maintained by Defendant as required by the state of Nevada, in exchange for higher compensation and One Nevada's commitment to comply with all state requirements going forward, including those related to record keeping. Additionally, because of potential defenses to Class Member claims, including through the development of discovery demonstrating some non-discriminatory factors considered in One Nevada's underwriting process, the Parties eventually agreed to payments of lower amounts, along with a commitment by One Nevada to modify its underwriting criteria and cease the Challenged Practice. The Parties also negotiated the source of funds to pay for Class Counsel's fees and costs, a Service Award, and the costs to implement the Settlement. The parties negotiated both the amount of Class Counsel's fees and costs as part of the settlement and the source of funds for the payment of fees and costs and the other costs associated with the Settlement. Following months of negotiations, the Parties agreed to pay Class Counsel attorney's fees and costs of up to $21,229. One Nevada has no knowledge of the actual amount of Class Counsel's fees and costs.

*Fourth* and finally, the terms of the Settlement are comparable to the settlements approved by other district courts within the Ninth Circuit in class-action cases filed against several other financial institutions like *Alliant* and *First Tech*.

Ultimately, this Settlement represents an excellent result for the Class Members. It is the product of arms-length negotiations conducted over a period of months. There was no collusion or self-dealing. Accordingly, the Settlement is fair, adequate, and reasonable.

**C.    The Proposed Incentive Award is Fair, Adequate, and Reasonable.**

Class Counsel will apply for an "Incentive Award" of $5,000 for the services performed by Plaintiff. An incentive award is permitted in the Ninth Circuit based on the services performed and time spent by the Named Plaintiff. *See Staton*, 327 F.3d at 977. "Incentive awards are fairly

11

typical in class action cases." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir.2009). Generally speaking, incentive awards are meant to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59.

Here, an incentive award of $5,000 is reasonable to compensate Plaintiff for his time and effort assisting Class Counsel to prosecute the claims of the Class Members and negotiate a settlement on behalf of the Classes. The proposed incentive award is within the range approved by courts in the Ninth Circuit. *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266 (N.D. Cal. 2015) (collecting cases). This Court has previously held reasonable an inventive award of $10,000 where the plaintiff was involved in litigation since its inception. *Sobel v. Hertz Corp.*, 53 F. Supp. 3d 1319 (D. Nev. 2014).

Further, Plaintiff faced heightened risk in bringing this action based on his lack of permanent immigration status, which makes him a potential target for harassment, and vulnerable to potential immigration consequences. Incentive payments are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 948–59; *see also Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) ("Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit."). Plaintiff had several telephone conversations and email communications with Class Counsel, provided documents, and provided background information. By bringing this action, Plaintiff placed himself at risk by publicizing his immigration status and revealing personal information. Without Plaintiff's participation, Class Counsel would not have been able to bring this action and achieve an exceptional result for the Classes.

### D. The Proposed Notice is Clear and Adequate

Rule 23(c)(2) requires that class notice be the "best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable

effort." Fed. R. Civ. P. 23(c)(2)(B). "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citation omitted).

Here, the proposed long and short form notices are easily understandable and include: (1) pertinent details about the case, including the nature of Plaintiff's claims; (2) the definition and scope of the proposed Class; (3) contact information for Class Counsel to answer questions; (4) the address for a website and telephone line maintained by the Settlement Administrator for Class Members to obtain important case documents and information; (5) instructions to file an objection or opt out of the Classes; and (6) the date, time, and location of the fairness hearing. Settlement, Exs. 1-2. Furthermore, the notice will be sent directly by mail to the individual Class Members identified in One Nevada's records. *Id.* at § 5. To ensure notice is mailed to the best available address, the Settlement Administrator will run the names and addresses of the Class Members through the National Change of Address Registry. *Id.* at § 5(b). In the event notice is returned undeliverable, the Settlement Administrator will use standard skip-tracing devices to obtain forwarding address information. *Id.* Finally, given that some Class Members may only understand Spanish, the notice will be sent in both Spanish and English. *Id.* And, it will provide that questions be directed to MALDEF attorneys who are experienced dealing with non-English speaking clients.

## V. A FINAL APPROVAL HEARING SHOULD BE SCHEDULED

Based on the deadlines set forth in the Settlement and Plaintiff's proposed order granting preliminary approval, in consultation with One Nevada, Plaintiff proposes the following schedule for finalizing and implementing the Settlement:

| **Preliminary Approval Hearing** | _____, 2025 |
|---|---|
| Preliminary Approval Order | TBD |
| Deadline for the Settlement Administrator to mail notice and for Settlement Website to go live | [30 days after Preliminary Approval Order] |
| Bar Date to Opt Out or Object | [75 days after Preliminary Approval Order] |

13

| Deadline to file Motion for Final Approval and Motion for Award of Fees, Costs, and Service Award | [90 days after Preliminary Approval Order] |
|---|---|
| **Final Approval Hearing** | TBD |
| Final Approval Order | TBD |
| Deadline for Defendant to transfer the Settlement Fund, amount awarded to Class Counsel for attorneys' fees and costs, any service award authorized by the Court, and fees and costs payable to the Settlement Administrator | [10 days after Final Approval Order] |
| Effective Date (assuming no appeals) | [30 days after Final Approval Order] |
| Settlement Administrator to pay amount awarded to Class Counsel for attorneys' fees and costs, any service award authorized by the Court, and Individual Settlement Payments | [40 days after Final Approval Order] |

## VI.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court: (1) certify, for settlement purposes only, the settlement classes under Federal Rules of Civil Procedure 23(a) and 23(b)(3); (2) grant preliminary approval of the Settlement; (3) appoint Plaintiff Jorge Hernandez Castro as Class Representative, his counsel MALDEF as Class Counsel, and RG2 Claims Administration LLC as Settlement Administrator; (4) approve mailing and emailing to the Class Members the Proposed Notice, and the establishment of a settlement website; and (5) schedule a hearing for final approval of the Settlement after entry of the Preliminary Approval Order.

Dated: February 6, 2025                     Respectfully submitted,

*/s/ Eduardo Casas*

Eduardo Casas (*Pro Hac Vice*)
Luis L. Lozada (*Pro Hac Vice*)
MEXICAN AMERICAN LEGAL DEFENSE
AND EDUCATIONAL FUND

Kathia Quiros
GWP IMMIGRATION LAW
*Attorneys for Plaintiff and the Proposed Class*

14